USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/6/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**George L. Cintron,**

                                        **Plaintiff,**

            **-against-**

**Nancy A. Berryhill, Acting Commissioner of Social Security,[1]**

                                        **Defendant.**

---

1:16-cv-07731 (SDA)

<u>OPINION AND ORDER</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

*Pro se* plaintiff George L. Cintron ("Plaintiff" or "Cintron") brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), challenging the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI").[2] (Compl., ECF No. 2.) Presently before the Court is the Commissioner's motion, pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings (Def.'s Notice of Mot., ECF No. 14), including the Commissioner's Memorandum of Law (ECF No. 15) and Supplemental Memorandum of Law. (ECF No. 18.) Plaintiff has not responded to the Commissioner's motion, and the time to do so has passed. (*See* Order, dated May 19, 2017, ECF No. 16.)

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes now-Acting Commissioner of Social Security Nancy A. Berryhill, who assumed her role on January 23, 2017, for Carolyn W. Colvin, who was the Acting Commissioner on the date this action commenced.

[2] On January 18, 2017, the Social Security Administration ("SSA") promulgated a final rule that dramatically changes the nature of the evaluation of medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 60 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416). These new regulations apply only to claims filed with the SSA on or after March 27, 2017. Accordingly, because Cintron's claims were filed before this date, to the extent that the Social Security regulations are cited in this Opinion and Order, the Court is referring to the version of the regulations effective before March 27, 2017.

For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is DENIED and the matter is remanded for further proceedings.

## BACKGROUND

### I.     Procedural Background

Cintron filed an application for benefits on February 25, 2013[3] alleging a disability onset date of August 7, 2009. (Administrative R. ("R.") 254-62, ECF No. 11.) His application was initially denied and Cintron requested a hearing, which was held on October 21, 2014 before ALJ Gitel Reich (R. 179-95). ALJ Reich denied Cintron's benefits application on November 26, 2014. (R. 161-78.) At the hearing, Cintron was represented by counsel.[4] (R. 164.) ALJ Reich's decision became the Commissioner's final decision when the Appeals Council denied review on September 1, 2016. (R. 1-9.)  This action followed.

### II.     Non-Medical Evidence and Cintron's Testimony

Born on January 29, 1968 (R. 254), Cintron was forty-five years old at the alleged disability onset and forty-six years old at the time of the ALJ hearing. When applying for SSI, he reported his height as 5' 6" and his weight as 178 pounds. (R. 280.) He reported his medical conditions as including chronic asthma, psoriatic arthritis, arthritis, psoriasis, high blood pressure, lower back pain, joint pain and headaches. (*Id.*)

---

[3] Cintron's Application Summary for SSI Income (R. 254) states that he applied for SSI on March 20, 2013. However, other documents in the Administrative Record, including the decision of the Administrative Law Judge ("ALJ"), state that the application was filed on February 25, 2013. (R. 164.) The Commissioner's Memorandum of Law also refers to the date of Cintron's application as February 25, 2013. (Mem. at 1.) Even assuming that the application was filed in March 2013, this is of no material consequence, since the date considered by the ALJ was earlier in time, and therefore the period considered was longer, not shorter.

[4] The ALJ's decision indicates that Cintron was represented by Thomas J. Giordano. (R. 164.) However, the attorney who appeared at the hearing was Jacob Neff. (R. 179, 181.)

At the hearing, Cintron testified that he experiences pain in his right knee, both elbows and wrists, his fingers, his left shoulder and his lower back as a result of his psoriatic arthritis. (R. 183-84, 187-93.) He testified that medication and physical therapy help with the pain. (R. 184-85, 188.) With regard to his knee pain, Cintron testified that he used a cane, though not the one prescribed to him. (R. 190.) He further testified that he has a hard time reaching (R. 191) and lifting and holding things due to his shoulder and wrist pain. (R. 192.) Cintron estimated that he could sit for approximately fifteen minutes before he needed to stand up or lay down, could stand for about forty-five minutes, and could walk about three blocks. (R. 185-86.) Cintron further testified that his pain sometimes affected his concentration (R. 193) and he had difficulty with anger management (R. 193-94), but that therapy helped him address it. (R. 194.)

Cintron completed the ninth grade in school. (R. 281.) He previously worked in construction, with the most recent period ending in August 2009. (R. 282, 305-16, 365, 373.) He also worked as a security officer from 1993 until 1996. (R. 308.) As for his daily activities, Cintron testified that he spends his day watching television and on the computer, which he is able to use by typing with one finger. (R. 186.) He will also get up and walk around his house and is able to leave the house to attend appointments. (R. 187.) Cintron reported that he travels independently when taking public transportation. For example, he traveled by train to the hearing and also used the train to go to his doctors. (*Id*.)

### III.     Medical Evidence Before the ALJ

The relevant time period before the Court is from February 25, 2013, the date that Cintron applied for SSI benefits (*see supra* n. 3), through November 26, 2014, the date the ALJ issued her

decision finding that he was not disabled.[5]

### A. William F. Ryan Community Health Center

Cintron was treated at the William F. Ryan Community Health Center between January 2011 and March 2013. (R. 378-87, 392.) He was seen for a routine check-up on March 13, 2013, which is around the time that he applied for SSI benefits. (R. 385-87.) The medical report from that check-up contains the assessments that Cintron had asthma and psoriasis. (R. 386.) Medication was prescribed for his asthma and he was referred to the dermatology and ophthalmology departments for his psoriasis. (R. 386.) The report reflects that Cintron had a "[c]onstitutional good general state of health, good exercise tolerance" and normal physical examinations with no pain reported at that time. (R. 385.)

### B. Dr. Ted Woods – Consultative Examination

A consultative internal medicine examination was performed on April 24, 2013 by Dr. Ted Woods. (R. 397-400.) Cintron reported that he was experiencing low back pain that was twisting in nature, as well as joint pain in his elbows, knees, wrists, ankles, fingers and toes. (R. 397.) Cintron reported that he could walk about five blocks, but tries to avoid stairs. (*Id.*) He also reported that prolonged sitting makes his pain worse. (*Id.*)

Dr. Woods observed that Cintron displayed a normal gait, and performed a heel/toe walk without difficulty. (*Id.*) His squat was full and his stance was normal. (*Id.*) During the examination, Cintron used no assistive devices and needed no help changing for the exam, getting on and off

---

[5] SSI benefits are not payable for any month prior to the month in which the application is filed. *See* CFR § 416.335 ("earliest month for which we can pay you benefits is the month following the month you filed the application"). Thus, for purposes of SSI, the agency must only determine whether the plaintiff was eligible at the time of filing. *See Davis v. Comm'r of Soc. Sec.*, No. 12-CV-2221 (JGK), 2013 WL 2152568, at *2 (S.D.N.Y. May 20, 2013).

the exam table or rising from a chair. (R. 399.) In terms of Cintron's musculoskeletal evaluation, Dr. Woods noted that the cervical and lumbar spine showed full flexion and extension, and that Cintron had a full range of motion of his shoulders, elbows, forearms and wrists. (*Id*.) Cintron also displayed full range of motion of his hips, knees and ankles, but complained of pain on these exams. (*Id*.) Dr. Woods found that Cintron had full strength in all lower and upper extremities with no muscle atrophy; his hand and finger dexterity was intact and his grip strength was full. (R. 400.)

Dr. Woods diagnosed Cintron with asthma, psoriatic arthritis, psoriasis and hypertension, but determined that his prognosis was "good." (R. 400.) Dr. Woods assessed that Cintron had no limitations for sitting, standing, pushing, pulling, climbing or carrying heavy weights, but that he should avoid dust, smoke and other known pulmonary irritants. (*Id*.) Dr. Woods did not opine as to Cintron's ability to bend, squat, climb or reach.

### C. Dr. Frederick Ast – Treating Rheumatologist

Cintron has been treated by Dr. Frederick Ast for his psoriatic arthritis since at least May 2013. (*See* R. 395 (referencing referral from Dr. Ast).) In March 2014, Dr. Ast completed an "Arthritis Residual Functional Capacity Questionnaire" for Cintron. (R. 418-24.) Dr. Ast did not indicate how long he had been treating Cintron, but stated that he treated him every two months. (R. 418.) He listed diagnoses of psoriasis, psoriatic arthritis and lumbar spine osteoarthritis. (*Id*.) He checked boxes on the form to indicate that there were objective signs of muscle spasm, impaired sleep, crepitus[6] and abnormal posture. (R. 418-19.) Dr. Ast circled a phrase on the form

---

[6] "Crepitus" or "crepitation" is defined as "a noise or vibration produced by rubbing bone or irregular degenerated cartilage surfaces together as in arthritis and other conditions." *Stedman's Medical Dictionary* 457 (28th ed. 2005).

to indicate that Cintron was "[i]ncapable of even 'low stress jobs'" though he did not provide reasons for this conclusion. (R. 419-20.) Dr. Ast checked "yes" to indicate that Cintron's impairments "lasted or can . . . be expected to last at least twelve months." (R. 420.) Dr. Ast filled in blanks on the form to indicate that Cintron could sit for two hours and "stand/walk" for three hours in an eight-hour day. (*Id.*)

In response to the question "approximately how often must your patient walk?," the form allowed choices of between one minute and ninety minutes, and Dr. Ast circled twenty minutes. (R. 421.) He also checked "yes" to an inquiry as to whether Cintron would need to shift positions at will, and would sometimes need to take unscheduled breaks. (*Id.*) Furthermore, Dr. Ast checked "yes" to an inquiry as to whether Cintron would need to elevate his legs when sitting, and would need to use a cane or other assistive device when "standing/walking." (R. 421-22.) Dr. Ast also checked lines on the form to indicate that Cintron could never lift and carry ten pounds, and could rarely lift and carry less than ten pounds. (R. 422.) Finally, Dr. Ast checked boxes to indicate that Cintron could never stoop, crouch, or climb stairs or ladders, and that he was likely to be absent "[a]bout four days per month." (R. 422-23.)

The only treatment notes from Dr. Ast in the record are from a June 11, 2014 visit for bloodwork. (R. 534-36).  Dr. Ast noted that Cintron complained of right knee pain and was wearing a brace and reported using a cane. (R. 534.)  Dr. Ast also noted that Cintron complained of lower back pain and elbow pain. (*Id.*) The notes appear to be incomplete, however,[7] and do not include any separate assessment by Dr. Ast.

---

[7] The top right-hand corner of the first page of notes states "Page 1 of 4" but there are only three pages in the record, one of which is blank. (R. 534-36.)

### D. JGB Rehabilitation

Cintron received treatment at JGB Rehabilitation Corp. ("JGB") between September 2013 and October 2014. (R. 427-38, 501-33.) During that time, he was seen by his primary care physician, Dr. Leonard Feingold, as well as by an optometrist and a physical therapist. (*Id.*) Between July 2014 and October 2014, Cintron's physical therapist continually assessed back pain, knee pain and muscle weakness of the lower extremity. (R. 501, 503, 505, 511, 513, 517.) The therapist's notes from October 2014 indicate that Cintron still complained of knee pain, though he reported pain relief following the session. (R. 501.) The therapist noted that Cintron was able to use the treadmill for ten minutes "with difficulty[.]" (*Id.*)

### E. Dr. Barry Protter – Treating Clinical Psychologist

Cintron began seeing licensed clinical psychologist Dr. Barry Protter in August 2014 and continued to see him regularly through October 2014. (R. 537-39.) During the initial visit Dr. Protter noted that Cintron presented with mild and modest or moderate depression and anxiety[8] and anger management issues. (R. 537.) Dr. Protter also completed a mental residual functional capacity ("RFC") assessment for Cintron, though that assessment was not before the ALJ. (R. 574, 578-81; Supp. Mem., ECF No. 18, at 2-3.)

### F. Miscellaneous Records

During the relevant time period of February 2013 through November 2014, Cintron received regular treatment for his psoriasis and asthma (R. 377, 393-94, 439-96) and was seen at the emergency room for an incident involving his left finger. (R. 497-500.) Cintron twice visited

---

[8] Dr. Protter's notes are difficult to read. (R. 537-39.) The ALJ read Dr. Protter's notes as indicating mild depression and anxiety. (R. 167.)

the emergency room for right knee pain. (R. 401-17, 425-26.)

IV.     **Additional Records Submitted To The Appeals Council**

Cintron submitted additional medical evidence to the Appeals Council for review. (R. 2, 13-16, 23-33, 41-86, 88-94, 97-108, 117-19, 120-59, 556-59.) This evidence included a medical report completed by Cintron's primary care physician, Dr. Feingold[9] (R. 104-08) and a second RFC assessment completed by Dr. Ast. [10] (R. 88-94, 97-102.) Dr. Feingold's report states that he has been treating Cintron since September 2013. (R. 104.) Dr. Feingold's assessment indicates significant limitations including that Cintron may never lift, carry, bend, squat climb or reach, and limitations on his ability to use his hands, legs and feet for repetitive movements. (R. 104-06.) Dr. Ast's second RFC assessment was completed in March 2016 and reiterated his March 2014 opinion regarding limitations in Cintron's physical functional capacity. (R. 90-93.) Dr. Ast found that Cintron could sit for fifteen minutes at one time and could stand for one hour before needing to sit or walk around. (R. 90.) In total, Dr. Ast opined that Cintron could sit for two hours and stand for two hours in an eight hour work day. But would need to shift positions and take unscheduled beaks. (R. 90-91.) Dr. Ast also opined that Cintron needed to elevate his legs for at least thirty percent of the work day and must use a cane or other assistive device while standing and walking. (R. 91.) Dr. Ast also included additional diagnoses regarding Cintron's mental

---

[9] The Appeals Council refers to a thirteen page RFC questionnaire completed by Dr. Feingold. (R. 2.) However, that description, also reflected in the index, is incorrect. Dr. Feingold completed a five-page medical source statement on March 8, 2016, which references her treatment of Cintron beginning in September 2013. (R. 104-08.)

[10] The Appeals Council refers to two RFCs completed by Dr. Ast, one on March 6, 2016 and one on March 19, 2016. (R. 2.) In fact, the record contains two copies of an RFC completed by Dr. Ast on March 9, 2016 (R. 88-94, 97-103) and one duplicate copy of the first RFC completed by Dr. Ast on March 6, 2014 that was also before the ALJ. (R. 109-15, 418-24.)

capacity, noting that Cintron had depression and psychosis affecting his pain and is incapable of even a low stress job due to his pain and depression. (R. 89.)

**DISCUSSION**

I.    **Legal Standards**

    **A.**  **Standard Of Review**

A motion for judgment on the pleadings should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995). In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence." *Ulloa v. Colvin*, No. 13-CV-4518 (ER), 2015 WL 110079, at *6 (S.D.N.Y. Jan. 7, 2015) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987)). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision[.]" *Id*; *accord Johnson*, 817 F.2d at 986.

Absent legal error, an ALJ's determination may be set aside if it is not supported by substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (vacating and remanding ALJ's decision). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

If the findings of the Commissioner as to any fact are supported by substantial evidence, those findings are conclusive. *See Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). The Court, however, will not defer to the Commissioner's determination if it is the product of legal error. *See Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012).

Where, as here, the Court is presented with an unopposed motion, it may not find for the moving party without reviewing the record and determining whether there is a sufficient basis for granting the motion. *See Wellington v. Astrue*, No. 12-CV-3523 (KBF), 2013 WL 1944472, at *2 (S.D.N.Y. May 9, 2013) (recognizing, in an action appealing the denial of disability benefits, the court's obligation to review the record before granting an unopposed motion for judgment on the pleadings); *Martell v. Astrue*, 09-CV-1701 (NRB), 2010 WL 4159383, at n.4 (S.D.N.Y. Oct. 20, 2010) (same); *cf. Vt. Teddy Bear Co. v. 1–800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("[C]ourts, in considering a motion for summary judgment, must review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law.") (internal quotation marks and citation omitted).

Further, *pro se* litigants "are entitled to a liberal construction of their pleadings," and, therefore, their complaints "should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks and citation omitted); *see also Alvarez v. Barnhart*, No. 03-CV-8471 (RWS), 2005 WL 78591, at *1 (S.D.N.Y. Jan. 12, 2005) (articulating liberal standard in reviewing denial of disability benefits for *pro se* plaintiff).

B.  **Determination Of Disability**

Under the Act, every individual determined to have a disability and who is eligible on the basis of his income and resources is entitled to SSI. 42 U.S.C. § 1381a. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

In determining whether an individual is disabled, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

The Commissioner's regulations set forth a five-step sequence to be used in evaluating disability claims:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509 [continuous period of 12 months], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 416.920.

## C. <u>The Treating Physician Rule</u>

Under the treating physician rule, the ALJ must give "controlling weight" to the opinion of a claimant's treating physician as to the nature and severity of the impairment as long as it "'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). "Before an ALJ can give a treating physician's opinion less than controlling weight, the ALJ should consider the following factors to determine the amount of weight the opinion should be given: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical support for the treating physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) the physician's level of specialization

in the area, and (6) other factors that tend to support or contradict the opinion." *Gonzalez v.*

*Comm'r of Soc. Sec.*, No. 16-CV-08445 (KMK) (PED), 2017 WL 7310391, at *11–12 (S.D.N.Y. Dec.

21, 2017), *report and recommendation adopted*, 2018 WL 671261 (S.D.N.Y. Jan. 31, 2018) (citing

20 C.F.R. § 416.927(c)(2)-(6)) (additional citation omitted). While the ALJ need not expressly

address each factor, the ALJ must provide "good reasons" for the weight accorded to the treating

physician's opinion. *See Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013) (summary order);

*see also* 20 C.F.R. § 416.927 (stating that the agency "will always give good reasons in our notice

of determination or decision for the weight we give [the claimant's] treating source's opinion").

## II.     ALJ Reich's Decision And Appeals Council Review

Following the five-step process, ALJ Reich determined that Cintron did not have a

disability within the meaning of the Act. The ALJ found at step one that Cintron had not engaged

in substantial gainful activity since the application date, and determined at step two that Cintron

had osteoarthritis of the lumbar spine, psoriasis, psoriatic arthritis, hypertension and asthma. (R.

166-68.) As for Cintron's alleged mental limitations, including anger management issues, the ALJ

determined that Cintron's mental conditions did not cause more than minimal limitations on his

ability to function, and were therefore, nonsevere. (R. 167.)

At step three, the ALJ found that Cintron did not have an impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1. (R. 167.) The ALJ then assessed Cintron's RFC, and

determined that he was able to do sedentary work that did not require more than occasional

exposure to dust, fumes, gases or other environmental irritants. (R. 168-71.) At the fourth step

of the sequential evaluation, the ALJ found that Cintron could not do his past work as a

construction worker or laborer. (R. 171-72.) Proceeding to the fifth step of the sequential evaluation, the ALJ considered Cintron's age, education and work experience, along with his RFC, and used the medical-vocational guidelines as a framework to conclude there were a significant number of jobs in the national economy that Cintron could perform. (R. 172-73.) The ALJ recognized that Cintron was forty-five to forty-six years old (R. 169, 172), had a limited education and was able to communicate in English, and that transferability of job skills was not an issue because his past work was unskilled. (R. 172.) These factual findings, together with an RFC for sedentary work, correspond to medical-vocational rule 201.18, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.18.[11] Under that rule, Cintron would not be considered disabled. 20 C.F.R. § 416.969; *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). However, because Cintron had both exertional and non-exertional limitations, the ALJ utilized the medical-vocational guidelines as a framework for decision-making. *See* 20 C.F.R. § 416.969a. The ALJ found that Cintron's limitation to no more than occasional exposure to dust, fumes, gases or other environmental irritants had little or no effect on the occupational base of unskilled sedentary work. (R. 172-73.) Accordingly, the ALJ found that Cintron was not disabled. (R. 174.)

Following the ALJ's decision, Cintron sought review from the Appeals Council, which denied his request on September 1, 2016. (R. 1.) The Appeals Council considered some additional evidence submitted by Cintron, including the mental RFC assessment by Dr. Protter (R. 5), but determined that it did not provide a basis for changing the ALJ's decision. (R. 2.) The Appeals

---

[11] Although the ALJ was aware that Cintron's age was forty-five to forty-six during the period at issue (R. 169, 172), the ALJ incorrectly cited Rule 201.24 of the medical-vocational guidelines (R. 172), which applies to an individual age eighteen to forty-four. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.24. Because application of the correct rule also directs a finding of "not disabled" at this stage, the Court agrees with the Commissioner that the error was harmless. (Mem. at 16 n.3.)

Council did not consider other new evidence submitted by Cintron that it determined related to the time period after the ALJ's decision. (*Id.*) In particular, the Appeals Council declined to consider the medical report completed by Cintron's primary care physician, Dr. Feingold, as well as the second RFC completed by Dr. Ast. (R. 2.)

### IV.     Analysis

ALJ Reich determined that Cintron has the RFC to perform sedentary work, except he can have no more than occasional exposure to dust, fumes, gases or other environmental irritants. (R. 168.) The Court finds that the ALJ erred because she did not provide good reasons for discounting the opinion of Cintron's treating rheumatologist, Dr. Ast, in violation of the treating physician rule, and did not otherwise provide a sufficient basis for her RFC determination. Further, the ALJ erred by not considering evidence of Cintron's mental impairments in determining Cintron's RFC and in failing to properly explain her assessment of Cintron's credibility.

The Court also finds that the Appeals Council erred in applying the treating physician rule and in failing to consider new and material evidence. Because the Court cannot say that the application of the correct legal standards by the ALJ and the Appeals Council could lead to only one conclusion, remand is necessary.  *C.f. Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (declining to remand even though the ALJ failed to satisfy the treating physician rule where "application of the correct legal principle could lead [only to the same] conclusion") (quoting *Johnson*, 817 F.2d at 986); *see also Meadors v. Astrue*, 370 F. App'x 179, 184 (2d Cir. 2010) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an

unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.") (quoting *Johnson*, 817 F.2d at 986).

## A. The ALJ Failed To Follow The Treating Physician Rule

In reaching the determination that Cintron can perform sedentary work with only an environmental limitation, the ALJ considered opinion evidence from two physicians: Dr. Ast, Cintron's treating rheumatologist, and Dr. Woods, the consultative physician. (R. 171.) The ALJ stated that she gave "limited weight" to the opinion of Dr. Ast "because it is unsupported by the overall record, when considering this claim longitudinally[,]" but did not cite to specific portions of the record in support of her determination. (*Id.*) "Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Burgess*, 537 F.3d at 129-30 (internal quotation and citation omitted); *see also Halloran*, 362 F.3d at 33 (remand appropriate when ALJ does not "comprehensively set forth reasons for the weight assigned to a treating physician's opinion."). Here, the ALJ's conclusory statement that Dr. Ast's opinion is unsupported by the record, without more, does not provide a good reason for rejecting his opinion. *See Marchetti v. Colvin*, No. 13-CV-02581 (KAM), 2014 WL 7359158, at *13 (E.D.N.Y. Dec. 24, 2014) ("[u]nder the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on such conclusory assertions of inconsistency with the medical record") (collecting cases); *see also Ely v. Colvin*, No. 14-CV-6641 (MWP), 2016 WL 315980, at *4 (W.D.N.Y. Jan. 27, 2016) (ALJ's statement that the rejected opinions were "not supported by the record as a whole" too conclusory to constitute a "good reason" to reject the treating psychiatrist's opinions).

The Commissioner argues that the ALJ gave Dr. Ast's opinion limited weight because it

was contradicted by other evidence in the record, including the report of Dr. Woods. (Mem. at 12-14.) While the report of a consultative physician may constitute substantial evidence in support of an ALJ's decision, *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995), the ALJ cannot simply choose to credit the opinion of a consulting physician over that of a treating physician, particularly one who is a specialist in his field, without providing some basis for her decision. *See Santos v. Astrue*, No. 12-CV-2075 (JGK), 2013 WL 5462337, at *7 (S.D.N.Y. Sept. 30, 2013) (ALJ's decision to reject the opinion of the treating physician must be supported with more reasoning than the single fact that the ALJ chose to accept the consulting physician's opinion).

In any event, ALJ Reich only gave "some weight" to the opinion of Dr. Woods. (R. 171.) Dr. Woods opined that Cintron had no exertional limitations, but the ALJ found that "when considering the overall record, [Cintron] would be unable to perform at greater than the sedentary exertional level." (*Id.*) The ALJ's conclusion that Cintron can perform sedentary work seems to have credited some of Dr. Ast's opinion over that of Dr. Woods, but she does not explain which parts she credited and which she did not. Further, the ALJ does not provide any explanation as to why she did not credit Dr. Ast's opinion regarding Cintron's need to take unscheduled breaks, elevate his legs, and avoid stooping, crouching or climbing ladders or stairs (R. 421-22), none of which were specifically addressed by Dr. Woods. Because the ALJ did not cite to specific portions of the record or otherwise indicate which portions of each physician's opinion she credited and which she did not,[12] the ALJ appears to have improperly relied on her

---

[12] The only portion of Dr. Woods' opinion that the ALJ clearly credits is his determination that Cintron "should avoid dust, smoke and other known respiratory irritants." (R. 400.) That determination, however, does not conflict with evidence from Cintron's treating physician and is well-supported by medical evidence in the record that Cintron suffers from asthma. (*See*, *e.g.*, R. 381, 392-93.)

own expertise in making the determination that Cintron is capable of performing sedentary work. *See Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) ("The ALJ plainly did not choose between properly submitted medical opinions, but rather improperly set his own expertise against that of physicians who submitted opinions to him.") (internal quotation omitted); *see also Brown v. Comm'r of Soc. Sec.*, No. 15-CV-4913 (RJS) (JCF), 2016 WL 7637285, at *10 (S.D.N.Y. June 29, 2016), *report and recommendation adopted*, 2016 WL 7646997 (S.D.N.Y. Dec. 30, 2016) (remanding when "no basis to assess whether ALJ's partial rejection of the opinion evidence was proper"); *Burgess*, 537 F.3d at 131 ("Neither a reviewing judge nor the Commissioner is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion, or indeed for any competent medical opinion.") (internal quotations and citations omitted).

The Commissioner also argues that the ALJ gave Dr. Ast's opinion limited weight because it was contradicted by evidence that Cintron could walk farther than two or three blocks. (Mem. at 13-14.) The Court is mindful that where there is conflicting evidence on the issue of disability, it is for the SSA, and not the Court, to weigh the conflicting evidence in the record. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). Thus, the ALJ would be entitled to reject Dr. Ast's opinion if it was inconsistent with other evidence in the record, as long as she adequately explained her decision. *Cf. Giunta v. Comm'r of Soc. Sec.*, 440 F. App'x 53, 54 (2d Cir. 2011) (deferring to ALJ's resolution of conflicting evidence when ALJ provided adequate explanation for the weight given to the opinions). However, the ALJ does not engage in any analysis as to the conflicting evidence and "[a] reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Further, while the Court agrees that there is evidence in the record that Cintron walked for much longer distances (R. 508, 518), there is also evidence that could support Dr. Ast's opinion. For example, less than one week after Dr. Ast completed the RFC assessment, Cintron had an arthrocentesis performed to drain fluid from his knee and he was prescribed ibuprofen and Vicodin for pain. (R. 409.) Cintron began physical therapy in July 2014 and was assessed with back pain, knee pain and muscle weakness of lower extremity. (R. 516-17.) At the time, Cintron reported to his therapist that he wore a knee sleeve on his right knee, used a standard cane and experienced an abnormal gait after long walks. (R. 516.) In August 2014, Cintron reported to his primary care provider, Dr. Feingold that he was walking "a lot during the day[,]" but complained of pain while walking and reported that the pain went away when he stopped walking for two days. (R. 509.) Similarly, Cintron's physical therapist's progress notes through October 2014 indicate that Cintron continued to complain of knee pain even though he experienced relief after each session, and the therapist's assessments of back pain, knee pain and muscle weakness of lower extremity, remained unchanged. (R. 501, 503, 505, 511, 513.) Without the ALJ providing some basis for her decision, it is not for this Court to reconcile this conflicting evidence on appeal. It is up to the ALJ, in the first instance, to determine whether progress notes indicating that Cintron was "walking 2 miles a day" (R. 518) or was "walking all day long" (R. 508) should be viewed as substantial evidence contradicting the opinion of Dr. Ast, so as to entitle his opinion to less than "controlling" weight. *See Burgess*, 537 F.3d at 132 (remanding so that ALJ could determine, in the first instance, whether there was substantial evidence contradicting opinion of treating physician).

Finally, the Commissioner argues that the symptoms reported by Dr. Ast were not

reflected anywhere else in the record. (Mem., ECF No. 15, at 13.) Specifically, the Commissioner asserts that Dr. Ast's report that Cintron experienced headaches as a side-effect of his medication is not supported by the record. (Mem. at 13-14.) However, this alone cannot be a basis to discount the entirety of Dr. Ast's opinion, especially as it related to the other impairments that the ALJ found to be severe. In any event, if the ALJ's decision was based on a lack of medical support in the record, she should have taken steps to obtain additional medical records from Dr. Ast. *See Rivas v. Barnhart*, No. 01-CV-3672 (RWS), 2005 WL 183139, at *23 (S.D.N.Y. Jan. 27, 2005) (ALJ may not reject a treating physician's opinion as unsupported by objective medical evidence "without taking affirmative steps to develop the record in this regard.") (collecting cases). Because the ALJ's duty to develop the record "dovetails" with the treating physician rule, "until an ALJ satisfies the threshold requirement under the duty to develop the record, the ALJ cannot even begin to discharge his duties . . . under the treating physician rule*." Barrie on behalf of F.T. v. Berryhill*, No. 16-CV-5150 (CS) (JCM), 2017 WL 2560013, at *10 (S.D.N.Y. June 12, 2017) (quoting *Oliveras ex rel. Gonzalez v. Astrue*, No. 07-CV-2841 (RMB) (JCF), 2008 WL 2262618, at *6 (S.D.N.Y. May 30, 2008), *report and recommendation adopted*, 2008 WL 2540816 (S.D.N.Y. June 25, 2008)). Dr. Ast's statement regarding Cintron's headaches may well have been supported by Dr. Ast's own notes and treatment records, which the ALJ did not endeavor to review.[13]

The Court finds that the ALJ's failure to follow the treating physician rule is not harmless error because the ALJ does otherwise provide a sufficient basis for her RFC determination. In

---

[13] As discussed above, the record before the ALJ only contained two pages of treatment notes from Dr. Ast, relating to bloodwork. (R. 534-36; *see supra* n. 7.)

addition, the ALJ failed to make specific findings regarding Cintron's capacity to perform relevant functions, which further "frustrate[s] meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.") As a result, the Court cannot conclude that the ALJ's RFC determination is supported by substantial evidence. *See Morales v. Astrue*, No. 11-CV-1853 (SAS), 2012 WL 414236, at *9 (S.D.N.Y. Feb. 9, 2012) (finding RFC not supported by substantial evidence when ALJ never explained how he arrived at his conclusion that claimant had the RFC to perform sedentary work).

### B. The ALJ Failed To Consider Evidence Of Cintron's Mental Impairments In Determining Cintron's RFC

At step two, the ALJ found that Cintron's mental conditions were nonsevere. (R. 167.) In doing so, she considered Cintron's testimony that he has trouble with anger management; allegations of headaches; progress notes from Dr. Protter, Cintron's treating psychologist's, indicating mild depression and anxiety; and Dr. Ast's opinion that Cintron is incapable of low stress jobs. (R. 166-68.) However, it is not clear from the ALJ's analysis that she separately considered this evidence in determining Cintron's RFC, as she was required to do. *See* 20 C.F.R. § 404.1545; *see also Hall v. Colvin*, No. 115-CV-01189 (LEK) (ATB), 2016 WL 6989806, at *11 (N.D.N.Y. Nov. 29, 2016) (discussing mandate to separate the step two severity inquiry from the RFC determination given the differences in the standards applicable to them); *Akey v. Astrue*, No. 5:08-CV-1084 (NAM) (VEB), 2011 WL 1298808, at *3 (N.D.N.Y. Mar. 31, 2011), *aff'd*, 467 F. App'x 15 (2d Cir. 2012) ("If an ALJ finds that the claimant suffered from any mental impairment, 'no matter how unsevere', he has the duty to take that into account when determining plaintiff's

capabilities.") (quoting *Gray v. Astrue*, No. 04-CV-3736 (KMW) (JCF), 2007 WL 2874049, at *7 (S.D.N.Y.2007)). Instead, the ALJ's analysis seems to commingle the step two determination of severity with the determination of Cintron's RFC. Furthermore, the ALJ also failed to make any findings regarding Cintron's ability to perform a variety of work-related functions, such as his ability to respond appropriately to supervision, coworkers, and work situations. Thus, the Court cannot determine whether her determination of Cintron's RFC was proper. *See Brown*, 2016 WL 7637285, at *9 (remanding for deficiencies in assessment of the plaintiff's mental RFC). Because the Appeals Council also did not consider evidence of Cintron's mental impairments, including additional evidence from Dr. Protter as discussed in Section V(A) below, the Court finds that remand is appropriate.

### C. The ALJ Erred In Assessing Cintron's Credibility

The Commissioner argues that substantial evidence supports the finding that Cintron's testimony was not fully credible. (Mem. at 14-16; R. 169.) However, despite noting the requirement to "make clear to the claimant, and any subsequent reviewers, the weight the adjudicator gives to the claimant's s statements and the reasons for that weight[]" (R. 169), the ALJ failed to do just that. *See* SSR 96-7P (S.S.A. July 2, 1996); 20 C.F.R. § 416.929 (setting forth seven factors relevant to evaluating subjective symptoms, including pain). The ALJ discounts Cintron's statements because the "overall record supports that he has no major neurologic compromise[,]" he had responded to treatment, and he had no difficulty taking public transportation. (R. 171.) Yet, the ALJ does not cite to any specific portions of the record or explain the weight she gave to Cintron's subjective complaints of pain, including complaints that he experienced pain despite taking medication. (R. 184-85, 188.) The ALJ does refer to Cintron's

testimony regarding his use of public transportation (R. 171), but that alone should not discredit his complaints of pain, nor does it establish that he can perform a full day of sedentary work. *See Martin v. Astrue*, No. 07-CV-3911 (LAP), 2009 WL 2356118, at *11 (S.D.N.Y. July 30, 2009) ("A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job.") (internal citation omitted). On remand, the ALJ should discuss the relevant factors and clearly state the reasons why Cintron is or is not entitled to full credibility.

## V. The Appeals Council Erred By Failing To Properly Apply The Treating Physician Rule And By Ignoring New And Material Evidence

Under the applicable regulations:

> if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. . . . It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 416.1470(b). Material evidence is evidence that is "both relevant to the claimant's condition during the time period for which benefits were denied and probative." *Tirado v. Bowen*, 843 F.2d 595, 597 (2d Cir. 1988). Cintron provided additional evidence to the Appeals Council, but the Council found that the new evidence either did not provide a basis for changing the ALJ's decision or was not related to the time period after November 26, 2014, the date of the ALJ's decision. (R. 2.) The Court finds that the Appeals Council erred because (1) it failed to explain the weight given to the mental RFC submitted by Dr. Protter, and (2) it incorrectly classified certain new evidence as outside the time period, when, in fact, it related to Cintron's condition prior to

the date of the ALJ's decision.

### A. Mental RFC Assessment By Dr. Protter

Cintron submitted to the Appeals Council a mental RFC questionnaire completed on October 17, 2014 by his treating licensed clinical psychologist, Dr. Protter. (R. 574, 578-81.) This evidence was not before the ALJ, though the ALJ did review three pages of progress notes from Dr. Protter.[14] (R. 537-39.) The Appeals Council denied review, stating that the new evidence did not provide a basis for changing the ALJ's decision. (R. 2.) The Court finds that the mental RFC assessment by Dr. Protter is probative because it is opinion evidence from a treating source. *See Bonet v. Astrue*, No. 05-CV-2970 (LTS) (THK), 2008 WL 4058705, at *18 (S.D.N.Y. Aug. 22, 2008) ("Highly probative evidence includes the opinion of a claimant's treating source."). Therefore, the Appeals Council was bound to apply the treating physician rule[15] and give good reasons for rejecting Dr. Protter's opinion. *See Collazo v. Colvin*, No. 13-CV-5758 (RJS) (HBP), 2015 WL 9690324, at *13 (S.D.N.Y. Dec. 22, 2015) (Appeals Council bound by treating physician rule and boilerplate denial failed to satisfy the regulation's requirement that the Commissioner give good reasons for rejecting treating physician's opinion).

In supplemental briefing requested by the Court, the Commissioner argues that the mental RFC assessment did not require review because it is contradicted by the doctor's treatment notes; Dr. Protter had only been seeing Cintron for two months; and the type of check box form that Dr. Protter completed is only marginally useful. (Supp. Mem. at 4.) However, the Appeals Council did not discuss any of these reasons in its decision, and even if the new evidence

---

[14] These notes were also part of the exhibit before the Appeals Council. (R. 575-77.)

[15] The treating physician rule applies to the opinion of a licensed clinical psychologist. *See* 20 C.F.R. § 416.902; *see also Sanchez v. Colvin*, No. 13-CV-6303 (PAE), 2015 WL 736102, at *4 (S.D.N.Y. Feb. 20, 2015).

was disputed by other evidence in the record, that "provides no basis for excusing the agency from the requirement that it make findings as to the impact of the treating physician rule and provide good reasons for rejecting a treating physician's opinion." *Garcia*, 208 F. Supp. 3d at 554. The new evidence is significant because Dr. Protter's opinion, though difficult to decipher in certain sections, appears to be consistent with Dr. Ast's opinion regarding Cintron's difficulty in dealing with stress, which was rejected by the ALJ. (R. 579.) While the Commissioner claims that the opinion is inconsistent with the treatment notes, the Court finds the majority of the notes difficult to read (*see* R. 537-39) and the Commissioner does not point to any specific inconsistencies between the two. (Supp. Mem. at 3-4.)

Further, even if the new evidence would not change the ALJ's determination regarding the severity of Cintron's mental impairments, as the Commissioner argues, it may have led the ALJ to find additional non-exertional limitations limiting Cintron's range of work. If that were the case, it would have the additional impact of requiring the ALJ to consult a vocational expert instead of relying solely on the medical-vocational guidelines. *See Scott v. Colvin*, No. 15-CV-8785 (AJP), 2016 WL 3919662, at *9 (S.D.N.Y. July 18, 2016) (when claimant's nonexertional limitations significantly limit the range of work permitted by his exertional limitations, the ALJ is required to consult with a vocational expert) (citing *Zabala*, 595 F.3d at 410) (internal quotation omitted). Because the Court finds that the mental RFC assessment by Dr. Protter was material and could have changed the ALJ's decision, remand is appropriate. *See Garcia v. Comm'r of Soc. Sec.*, 208 F. Supp. 3d 547, 552 (S.D.N.Y. 2016) ("Where the Appeals Council fails to appropriately consider new and material evidence in light of the treating physician rule, the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence.") (citing

cases).

**B. Other New Evidence**

The Appeals Council determined that the additional evidence submitted by Cintron (R. 13-16, 23-33, 41-86, 88-94, 97-108, 117-19, 120-59, 556-59) was outside the time period at issue. (R. 2.) As set forth in section IV above, this evidence included a medical report completed by Cintron's primary care physician, Dr. Feingold, which indicated a period of treatment between September 2013 and March 2016. (R. 104-08.) The evidence also included a second RFC assessment completed by Dr. Ast. (R. 88-94, 97-102; *see supra* n. 10.)

"Courts in this Circuit have consistently held that the Commissioner should consider new, material evidence that sheds light on the claimant's condition prior to the ALJ determination— even if the evidence post-dates that determination." *Santiago-Jimenez v. Comm'r of Soc. Sec.*, No. 15-CV-3884 (GBD) (JCF), 2016 WL 5942318, at *3 (S.D.N.Y. Oct. 13, 2016); *see also Maloney v. Berryhill*, No. 16-CV-3899 (ADS), 2018 WL 400772, at *5 (E.D.N.Y. Jan. 12, 2018) ("the case law shows that a retrospective opinion of a treating physician is highly probative[.]"). While the second RFC from Dr. Ast is substantially the same as the first, it reinforces his earlier assessment and also reflects his treatment of Cintron over a longer period, which may have caused the ALJ to give more weight to his opinion. Similarly, the medical source statement from Dr. Feingold reinforces the earlier opinion of Dr. Ast. Dr. Feingold finds major restrictions in Cintron's ability to lift, carry, bend, squat, climb and reach, based on his treatment of Cintron during the relevant time period. (R. 106.) Because the ALJ may have given more weight to consistent opinions from two different treating physicians, this evidence is material and should have been considered by the Appeals Council. *See Cahill v. Colvin*, No. 12-CV-9445 (PAE) (MHD), 2014 WL 7392895, at *32

(S.D.N.Y. Dec. 29, 2014) (report of examining physician that supported the conclusion of treating physicians "meaningfully contributed additional heft to the accumulation of evidence supporting plaintiff's claims.") (internal quotation omitted).

On remand, the ALJ should consider this evidence as it relates to the period at issue, as well as any other evidence submitted to the Appeals Council that may shed light on the severity of Cintron's impairments during the relevant time. *See Williams v. Comm'r Soc. Sec.*, 236 Fed. App'x 641, 644 (2d Cir. 2007) ("medical evidence generated after an ALJ's decision [can] not be deemed irrelevant solely because of timing, [as] subsequent evidence of the severity of a condition suggests that the condition may have been more severe in the past than previously thought.")

## CONCLUSION

For the foregoing reasons, the Court DENIES the Commissioner's motion for judgment on the pleadings and remands this matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED:     March 6, 2018
           New York, New York

_____
**STEWART D. AARON**
**United States Magistrate Judge**